UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER L MATTICE,

                Petitioner,

    v.

MELISSA ANDREWJESKI,

                Respondent.

CASE NO. 3:22-cv-05782-JHC-GJL

REPORT AND RECOMMENDATION

Noting Date: June 16, 2023

      The District Court has referred this *habeas corpus* action to United States Magistrate Judge Grady J. Leupold. Petitioner Christopher L. Mattice filed his federal habeas Petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court guilty plea and sentence for second degree rape of a child. *See* Dkt. 4. After review of the relevant record, the Court concludes that the state court's adjudication was not contrary to, nor an unreasonable application of, clearly established federal law. The Court finds an evidentiary hearing is not necessary. The Court recommends the Petition be dismissed with prejudice and further recommends a certificate of appealability not be issued.

# I.    BACKGROUND

## A.    Factual Background

The Washington State Court of Appeals, Division II ("state court of appeals"), in its order dismissing Petitioner's first Personal Restraint Petition ("First PRP") summarized the facts underlying Petitioner's conviction as follows:

> Christopher Mattice seeks relief from personal restraint imposed following his 2020 plea of guilty to second degree rape of a child. In 2018, then 11-year-old D.L. was living with her father, other adult relatives and another adult, Mattice, who was D.L.'s grandmother's boyfriend. D.L. reported to her mother that Mattice had been engaging in sex acts with her over a number of years. In a forensic interview, D.L. described those acts and described sex toys that Mattice had used. After obtaining a search warrant, police retrieved those sex toys from the hidden locations that D.L. had described. Forensic examination located both Mattice's and D.L.'s DNA on those sex toys. The State charged Mattice with five counts of first degree rape of a child and one count of attempted first degree rape of a child. The State later agreed to amend its complaint to charge one count of second degree rape of a child in exchange for a plea of guilty. After a colloquy with the trial court, Mattice pleaded guilty to second degree rape of a child, and after a presentence investigation, was sentenced to 84 months to life of confinement.

Dkt. 15-1 at 308–09 (Ex. 13) (footnote omitted).

## B.    Procedural Background

### 1.    Direct Appeal

Petitioner filed a timely direct appeal. Dkt. 15-1 at 39 (Ex. 2). However, the appeal was dismissed as abandoned because Petitioner failed, after two notices, either to pay the filing fee or to seek an order of indigency. Dkt. 15-1 at 66–57 (Ex. 5). The state court of appeals issued its mandate on May 5, 2021.

### 2.    First PRP

On April 9, 2021, Petitioner filed his First PRP. Dkt. 15-1 at 93–121 (Ex. 7). Petitioner asserted his counsel was ineffective in, *inter alia*, failing to obtain Petitioner's side of the story, to interview all of the witnesses Petitioner identified, to gather school records, to collect evidence

1  of the victim's whereabouts or to review discovery with Petitioner. Dkt. 15-1 at 97 (Ex. 7). The

2  state court of appeals denied Petitioner's PRP as frivolous on October 22, 2021. Dkt. 15-1 at

3  308–311 (Ex. 13). The record contains no indication that Petitioner sought review by the

4  Washington Supreme Court ("state supreme court"). The state court of appeals issued a

5  certificate of finality on December 8, 2021.

6      3. Second PRP

7      On February 8, 2022, Petitioner filed another PRP (the "Second PRP"). Dkt. 15-1 at 315–

8  337. The following claims in the Second PRP are relevant to this matter: (1) counsel was

9  ineffective in failing to perform a complete investigation, including failure to interview all

10  witnesses; (2) counsel failed to introduce evidence of possible motives for making false

11  accusations; and (3) evidence existed to contradict facts asserted by the prosecution.[1] Dkt. 15-1

12  at 324–325 (Ex. 15). The state court of appeals dismissed the Second PRP as untimely. Dkt. 15-1

13  at 342–43 (Ex. 17).

14      Petitioner brought a motion to modify, which the state supreme court construed as a

15  motion for discretionary review. Dkt. 15-1 at 349 (Ex. 18). The Deputy Commissioner of the

16  state supreme court concluded the petition was not untimely, but nonetheless denied

17  discretionary review, finding the dismissal of the Second PRP was "correct in result." Dkt. 15-1

18  at 357 (Ex. 19). Petitioner filed a motion to modify (Dkt. 15-1 at 360–375 (Exs. 20, 21). The

19  state supreme court denied the motion on July 13, 2022. Dkt. 15-1 at 377 (Ex. 22). The state

20  court of appeals issued a certificate of finality on July 19, 2022.

21

22

23  [1] The state supreme court construed Petitioner's discussion of the evidence in the Second PRP as asserting a
    sufficiency of the evidence claim. Dkt. 15-1 at 357 (Ex. 19). Respondent similarly construes the Second PRP as
24  asserting a sufficiency claim. Dkt. 14 at 4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

    4.  <u>Federal Habeas Petition</u>

    Petitioner initiated his federal habeas proceeding on October 14, 2022. The Petition's grounds for relief can be summarized as follows:

1. Ineffective assistance of counsel in failing to contact and interview witnesses and failing to subpoena witnesses for trial;
2. Insufficiency of the evidence;
3. Ineffective assistance of counsel in conducting an incomplete investigation; and
4. A breakdown of communications between Petitioner and his counsel causing Petitioner to seek to fire his counsel.

Dkt. 4 at 5–14. Respondent has filed an Answer and the relevant state court record. Dkts. 14, 15. Petitioner has filed a Traverse. Dkt. 17.

## II.   DISCUSSION

    Respondent concedes that the Petition is timely and that the grounds for relief have been properly exhausted. Dkt. 14 at 5. The Court agrees. Accordingly, the Court reviews Petitioner's claims on the merits.

**A.**    **Standard of Review**

    Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has held a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

REPORT AND RECOMMENDATION- 4

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. A state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

Habeas relief may also be granted if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

**B.    Ineffective Assistance of Counsel (Grounds 1, 3 and 4)**

Petitioner contends his trial counsel was ineffective in failing to contact, interview and subpoena witnesses identified by Petitioner and conducted an incomplete investigation by failing

to interview witnesses, to obtain school or work records, or to address the victim's circumstances and motives. Dkt. 4 at 5–6, 10–11. Petitioner also asserts that counsel's failure to communicate adequately and a conflict over how his defense should proceed led him to unsuccessfully seek to "fire" his counsel. *Id*. at 13–14. Respondent contends Petitioner's claims of pre-guilty plea ineffectiveness are barred by the plea, and the state court reasonably determined counsel did not provide ineffective assistance as to the plea. Dkt.14 at 10–15.

1. Legal Standard

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. A defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In order to prevail on an ineffective assistance of counsel

1    claim, a petitioner must overcome the presumption that counsel's challenged actions might be

2    considered sound trial strategy. *Id.*

3        The second prong of the *Strickland* test requires a showing of actual prejudice related to

4    counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

5    reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6    would have been different. A reasonable probability is a probability sufficient to undermine

7    confidence in the outcome."  *Id.* at 694. In the context of counsel's advice to plead guilty, "the

8    defendant must show that there is a reasonable probability that, but for counsel's errors, he would

9    not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52,

10   59 (1985). This test does not focus on the defendant's subjective contention, but instead employs

11   an objective standard. *Id.* at 59–60; *Sanchez v. United States,* 50 F.3d 1448, 1454 (9th Cir. 1995).

12   For example, the alleged failure to pursue exculpatory evidence is not prejudicial in the case of a

13   guilty plea if it would not have affected the outcome of a trial because a defendant under an

14   objective standard would not have insisted on going to trial. *Hill,* 474 U.S. at 59–60; *Sanchez,* 50

15   F.3d at 1454.

16       While the Supreme Court established in *Strickland* the legal principles that govern claims

17   of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

18   whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S.

19   at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas

20   review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

21   was unreasonable." *Id.* Under this "doubly deferential" standard, "a federal court may grant relief

22   only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a

23   different decision." *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (quoting *Harrington*, 562 U.S.

24

1   at 101) (emphasis in original). As the Supreme Court explained in *Harrington*, "[a] state court

2   must be granted a deference and latitude that are not in operation when the case involves review

3   under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "[E]ven if there is reason to

4   think that [trial] counsel's conduct 'was far from exemplary,' a court still may not grant relief if

5   '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have

6   chosen." *Dunn*, 141 S. Ct. at 2410 (quoting *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013).

7       2.  Pre-Guilty Plea Ineffective Assistance of Counsel

8       Most of Petitioner's ineffectiveness assertions pertain to counsel's pretrial investigation,

9   including counsel's alleged failure to contact witnesses or to obtain evidence identified by

10  Petitioner, and a conflict with counsel over defense strategy. *See* Dkt. 4 at 6, 11, 14. Defendant

11  contends that under Federal law, Petitioner's guilty plea precludes his challenge to alleged pre-

12  plea constitutional violations. Dkt. 14 at 13.

13      "As a general rule, one who voluntarily and intelligently pleads guilty to a criminal

14  charge may not subsequently seek federal habeas corpus relief on the basis of pre-plea

15  constitutional violations." *Hudson v. Moran*, 760 F.2d 1027, 1029–30 (9th Cir. 1985). As the

16  Supreme Court has explained:

17      > [A] guilty plea represents a break in the chain of events which has preceded it in
18      > the criminal process. When a criminal defendant has solemnly admitted in open
        > court that he is in fact guilty of the offense with which he is charged, he may not
        > thereafter raise independent claims relating to the deprivation of constitutional
19      > rights that occurred prior to the entry of the guilty plea.

20  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). A defendant may only attack the "voluntary and

21  intelligent" nature of the guilty plea. *Hudson*, 760 F.2d at 1030. This general prohibition on

22  raising pre-plea claims on habeas corpus includes claims of ineffective assistance of counsel. *See*

23  *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (petitioner's guilty plea waived claim

24  that counsel was ineffective at in camera hearing); see also *Moran v. Godinez*, 40 F.3d 1567,

REPORT AND RECOMMENDATION- 8

1577 (9th Cir. 1994) (refusing to consider a claim that defense counsel was ineffective for failing

to challenge defendant's confession because it was an "assertion of an alleged pre-plea

constitutional violation") (amended on other grounds by *Moran v. Godinez*, 57 F.3d 690 (9th Cir.

1994)); *Ortberg v. Moody*, 961 F.2d 135, 137–38 (9th Cir. 1992) (petitioner's nolo contendere

plea "preclude[d] him from challenging" claim he "was unconstitutionally denied complete

discovery").

Thus, "freestanding constitutional claims" that do not implicate Petitioner's ability to

make an informed choice whether to plead guilty are barred by Petitioner's guilty plea. *See*

*Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. 2017) (claims of pre-plea ineffective assistance of

counsel are cognizable on federal habeas review only when the action, or inaction, of counsel

prevents petitioner from making an informed choice whether to plead).

Here, Petitioner's claims of failure to interview witnesses and to pursue motive or alibi

evidence, together with Petitioner's general complaints that counsel was unresponsive or

disagreed with him, are barred by *Tollett*. Nothing in those claims identifies any information

Petitioner required to make an informed choice regarding his plea. Indeed, Petitioner does not

allege that he was inadequately informed to make a plea decision; instead, his assertion is that

counsel did not adequately develop evidence Petitioner considered important. Pursuant to *Tollett*,

such claims cannot survive the plea. *See, e.g. Helm v. Van Boening*, No. C09-5569 FDB,

2010 WL 417420, at *15 (W.D. Wash. Jan. 29, 2010) (Petitioner's "allegations of pre-plea

ineffective assistance, including his claims that counsel failed to investigate and prepare a

defense, are barred by [petitioner's] guilty plea"); *Howard v. Robertson*, No. 2:17-02245 AG

(ADS), 2019 WL 8643521, at *3 (C.D. Cal. Dec. 30, 2019) (pre-plea claims that counsel failed

1   to provide Petitioner with discovery, was unresponsive to Petitioner, and failed to file a motion

2   to permit Petitioner to seek new counsel were barred by *Tollett*).

3          3.   <u>Ineffective Assistance as to Guilty Plea</u>

4          Petitioner contends that he was "coerced" into pleading guilty by his counsel's

5   inadequate preparation of his case. Specifically, Petitioner asserts his counsel's failure to

6   subpoena witnesses for trial led him to plead guilty. *Id.* at 4, 14; Dkt. 17 at 1. In addition,

7   Petitioner asserts these failures underlie a communication breakdown that led him to request new

8   counsel. Dkt. 4 at 14. Respondent argues that the state court reasonably determined counsel did

9   not provide ineffective assistance in connection with Petitioner's guilty plea. Dkt. 14 at 14–15.

10          The state supreme court held counsel's performance with respect to the plea was not

11   deficient:

12          Mr. Mattice primarily contends that his attorney was ineffective in relation to his
            plea. But his arguments on this point are virtually the same as those he made in his
13          first personal restraint petition, which the Court of Appeals dismissed as clearly
            meritless. No. 55691-0-II (Oct. 22, 2021). To raise this issue again, Mr. Mattice
14          must demonstrate good cause for doing so. RAP 16.4(d). He does not do so. He
            mainly relies on more recent letters of purported witnesses, apparently presented to
15          show that counsel was ineffective in his investigation and to demonstrate his
            innocence. But these letters, to the limited extent they relate admissible evidence
16          (and not hearsay or information outside the writer's first-hand knowledge), they do
            not demonstrate that it was impossible for Mr. Mattice to have committed the
17          crimes alleged. The charges, for one thing, were supported by DNA evidence. And
            in pleading guilty, Mr. Mattice admitted he had sexual intercourse with the victim,
18          and he does not show his plea was coerced.

19   Dkt. 15-1 at 357 (Ex. 19). The state court of appeals' decision dismissing Petitioner's First PRP,

20   which the state supreme court cites with approval, concluded that Petitioner's claims that counsel

21   had failed to interview witnesses, failed to go over discovery with him, met only briefly with him

22   and failed to answer questions about the proceedings or evidence were "contradicted by other

23   portions of his petition, by the numerous letters he sent to the court or his statements during court

24   hearings." Dkt. 15-1 at 310. The state court of appeals further held that Petitioner's claim

1   regarding failure to obtain school records did not establish "how [those] records would have

2   assisted him." *Id*. The court concluded that Petitioner's ineffective assistance claims were

3   "frivolous." *Id.* at 311.

4        Petitioner twice argued before the trial court that he should be permitted to "fire" his

5   counsel for ineffectiveness. On January 31, 2020 (prior to his plea agreement), Petitioner

6   asserted a "breakdown in communication" and "divided loyalty" on the part of his counsel. Dkt.

7   15-1 at 203 (Ex. 12). When asked to elaborate, Petitioner complained his counsel's advice was

8   based upon the evidence gathered by the prosecution and not on the evidence Petitioner thought

9   he could bring. *Id*. The trial court denied Petitioner's request, explaining that it was counsel's

10  obligation to explain the prosecution's evidence and to provide a full understanding of the risks

11  and benefits of proceeding to trial or accepting a plea offer. *Id*. at 204. That Petitioner did not

12  "like the message," the trial court concluded, is not a sufficient ground to discharge his counsel.

13  *Id*.

14       Similarly, shortly after entry of the guilty plea, Petitioner made multiple *pro se* filings

15  seeking to discharge his counsel who, he claimed, had "lied" to him. Dkt. 15-1 at 229–257 (Ex.

16  At 264). The trial court held a hearing, at which Petitioner was asked to specify how his counsel

17  had misled him. *Id*. Petitioner identified only a failure to disclose the possibility of a no-contact

18  order—an issue that was expressly set out in the plea documents (and addressed in the plea

19  colloquy). *Id*.; Dkt. 15-1 at 224 (Ex. 12). The trial court concluded: "I haven't heard anything

20  that says that Mr. Talney has not performed as an effective attorney in representation of Mr.

21  Mattice[.] I haven't heard anything to say that there is a conflict or that he cannot continue in his

22  representation of Mr. Mattice." *Id*.

23

24

1    In short, the record demonstrates that the conflicts and communications difficulties

2    asserted by Petitioner resulted from Petitioner's dislike of counsel's evaluation of the evidence

3    and not from any misinformation regarding the nature of the plea agreement. The record

4    establishes that counsel did, in fact, conduct an investigation. For example, Petitioner's

5    girlfriend, Merian Hubbard, attests that she spoke with Petitioner's counsel and identified

6    potential witnesses, that counsel interviewed her, and that he sought her assistance in setting up

7    interviews with additional witnesses. Dkt. 15-1 at 335 (Ex. 15). Counsel's initial list of potential

8    witnesses included several of the identified individuals. Dkt. 15-1 at 197 (Ex. 12). Any ultimate

9    choice to call fewer witnesses indicates a strategic decision, reflecting counsel's evaluation of the

10   credibility and admissibility of the witnesses' testimony. Indeed, as the state supreme court

11   determined, the witnesses' evidence (as reflected in the letters submitted by Petitioner) was

12   largely inadmissible—and in any event inadequate to counter the extensive evidence, including

13   DNA, supporting the prosecution's case. Dkt. 15-1 at 357 (Ex. 19).

14   Finally, the record demonstrates that Petitioner obtained a favorable plea. Petitioner was

15   originally charged with five counts of first degree rape of a child and one count of attempted first

16   degree rape of a child. Dkt. 15-1 at 170–172 (Ex. 12). The prosecution contended during the state

17   court proceedings that a conviction on these charges would result in a minimum sentence of

18   240–318 months to life. Dkt. 15-1 at 143 (citing RCW 9.94A.507, .510, .515, .525). But because

19   the prosecution wished to avoid the trauma the victim would have endured while testifying,

20   Petitioner was able to plead guilty to a single count of a lesser offense—second degree rape of a

21   child. Dkt. 15-1 at 208 (Ex. 12).[2] This greatly reduced the applicable sentence—and Petitioner

22

23   [2] Petitioner acknowledged that the facts of his offense, given the victim's age, provided a factual basis for the greater first degree offense and not the more favorable second degree charge (Dkt. 15-1 at 217). However, as the state supreme court stated, Washington law permits such a plea under these circumstances. Dkt. 15-1 at 357 (Ex. 19) (citing *In re Barr*, 102 Wn.2d 265, 269–70 (1984).

24

1    was ultimately sentenced to 84 months to life—a nearly one-third reduction in the minimum

2    sentence. Dkt. 15-1 at 7 (Ex. 1).

3        Given the circumstances, the Court cannot conclude that counsel's decisions, culminating

4    in a guilty plea to greatly reduced charges, were strategies that "no competent lawyer would have

5    chosen." *Dunn*, 141 S. Ct. at 2410. Moreover, there is no support in the record for any contention

6    that counsel prevented Petitioner from making an informed choice whether to accept the plea

7    agreement. The state courts did not unreasonably apply clearly established law in holding

8    Petitioner's counsel did not provide ineffective assistance regarding his guilty plea. The Court

9    therefore recommends that Grounds 1, 3 and 4 of the Petition be **DENIED**.

10   **C.    Sufficiency of the Evidence (Ground 2)**

11       Petitioner contends the evidence was insufficient to establish his guilt. Dkt. 4 at 8–9.

12   Respondent argues Petitioner fails to meet the standard established in *Jackson v. Virginia*, 443

13   U.S. 307 (1979). Dkt. 14 at 16.

14       The Constitution forbids the criminal conviction of any person except upon proof of guilt

15   beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When evaluating a claim of

16   insufficiency of the evidence to support a conviction, the reviewing court must decide "whether,

17   after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

18   could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443

19   U.S. at 319 (emphasis in original).

20       Here, Petitioner pled guilty. As discussed above, the state supreme court rejected

21   Petitioner's contention that there was insufficient evidence to support the guilty plea. The court

22   concluded:

23

24

1
2

> To the extent Mr. Mattice challenges the sufficiency of the evidence, the question in relation to a guilty plea is whether there is factual support for the plea. CrR 4.2(d). Here, there plainly is, and Mr. Mattice does not show otherwise.

3    Dkt. 15-1 at 357 (Ex. 19).

4        The state supreme court did not unreasonably apply clearly established law, nor

5    unreasonably determine the facts. Petitioner submitted statements with his Second PRP from the

6    witnesses he contends his counsel should have presented. Dkt. 15-1 at 332–337 (Ex. 15).

7    However, as the state supreme court noted, much of this evidence is either hearsay or made

8    without personal knowledge. *See id*. To the extent the evidence is cognizable, the primary thrust

9    of the statements is that in light of the multiple residents in the house, there were few

10   opportunities for Petitioner and the victim to be alone together. *Id*. But, as the state supreme

11   court held, the evidence does not demonstrate it was impossible for Petitioner to have committed

12   the crimes.

13       Even aside from Petitioner's admission in his guilty plea that he had sexual intercourse

14   with the victim (Dkt. 15-1 at 217), the record contains extensive evidence supporting his guilt.

15   The victim's father told police that Petitioner and the victim were alone together on several

16   occasions. Dkt. 15-1 at 174 (Ex. 12). The 11-year-old victim provided detailed descriptions of

17   three sex toys and a sex swing, including how each was used, and described the cabinet and

18   crawl space in which they were stored—all of which were confirmed by a police search. *Id*. The

19   sex toys contained both the victim's and Petitioner's DNA (as well as that of Petitioner's

20   girlfriend). Dkt. 15-1 at 193 (Ex. 12). The sex swing contained only the DNA of Petitioner and

21   the victim. *Id*.

22       In light of the strength of the evidence, it is not unreasonable to conclude that "*any*

23   rational trier of fact could have found the essential elements of the crime beyond a reasonable

24   doubt." *Jackson*, 443 U.S. 319. The state supreme court did not unreasonably determine that

1  there was factual support for the guilty plea. The Court therefore recommends that Petitioner's

2  Ground 2 be **DENIED**.

### III.   EVIDENTIARY HEARING

4        Petitioner requests that the Court hold an evidentiary hearing. Dkt. 8. Respondent

5  opposes Petitioner's request. Dkt. 9.

6        The decision to hold a hearing is committed to the Court's discretion. *Schriro v.*

7  *Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

8  could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

9  the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief

10 is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

11 state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011). A hearing is not required if the allegations

12 would not entitle Petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It

13 follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

14 relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Pinholster,* 563

15 U.S. 170. "[A]n evidentiary hearing is not required on issues that can be resolved by reference to

16 the state court record." *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). Under this

17 standard, the Court finds it unnecessary to hold an evidentiary hearing.

### IV.   CERTIFICATE OF APPEALABILITY

19       A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

20 court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

21 (COA) from a district or circuit judge. A certificate of appealability may issue only if the

22 petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C.

23 § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could

24

disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

*El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Pursuant to this standard, this Court concludes that Petitioner is not entitled to a certificate of

appealability with respect to this Petition.

## V.   CONCLUSION

For the reasons stated above, the Court recommends the Petition be dismissed with

prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

*Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on June

16, 2023, as noted in the caption.

Dated this 31st day of May, 2023.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION- 16